## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| SHEILA GUTTO, )<br>)<br>Plaintiff, )<br>)<br>) CIVIL ACTION<br>v. )<br>) No. 16-1308-JWL<br>NANCY A. BERRYHILL,[1] )<br>Acting Commissioner of Social Security, )<br>)<br>Defendant. )<br>_____ ) | |

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Acting Commissioner of Social Security (hereinafter Commissioner) denying Disability Insurance benefits (DIB) and Supplemental Security Income (SSI) benefits under sections 216(i), 223, 1602, and 1614(a)(3)(A) of the Social Security Act. 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c(a)(3)(A) (hereinafter the Act). Finding at most harmless error in the Administrative Law Judge's (ALJ) decision, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

---

[1]On Jan. 20, 2017, Nancy A. Berryhill became Acting Commissioner of Social Security. In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Ms. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant. In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

**I.     Background**

Plaintiff applied for DIB and SSI benefits, alleging disability beginning June 24, 2012. (R. 12, 164, 168). Plaintiff exhausted proceedings before the Commissioner, and now seeks judicial review of the final decision denying benefits. She argues that the ALJ erred in applying the three phases for evaluating step four of the sequential evaluation process and that the vocational expert (VE) testimony impermissibly conflicts with the Dictionary of Occupational Titles (DOT).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence and whether she applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). Substantial evidence is more than a scintilla, but it is less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005). Nonetheless, the

determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion. Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability. 20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1). Williams, 844 F.2d at 750-51. Next, the Commissioner assesses claimant's residual functional capacity (RFC). 20 C.F.R. §§ 404.1520(e), 416.920(e). This assessment is used at both step four and step five of the sequential evaluation process. Id.

The Commissioner then evaluates steps four and five of the sequential process-- determining whether, in light of the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, claimant is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084). In steps one through four the

burden is on Plaintiff to prove a disability that prevents performance of past relevant work. Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2. At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC assessed. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

The court addresses Plaintiff's allegations in the order presented in her Brief, and finds no reversible error.

## II.  Step Four

At step four of the sequential evaluation process, the ALJ is required to make specific findings in three phases. Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996) (citing Soc. Sec. Ruling (SSR) 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings 809 (1983)). In phase one, "the ALJ should first assess the nature and extent of [the claimant's] physical limitations." Winfrey, 92 F.3d at 1023. In phase two, the ALJ must "make findings regarding the physical and mental demands of the claimant's past relevant work." Winfrey, 92 F.3d at 1024. Finally, in phase three, the ALJ must determine "whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." Id., 92 F.3d at 1023. These findings are to be made on the record by the ALJ. Id. at 1025; see also, SSR 82-62, 1975-1982 West's Soc. Sec. Reporting Serv., Rulings, at 813 ("decision must contain . . . specific findings of fact" regarding each of the three phases).

The Tenth Circuit has explained that an ALJ may rely upon VE testimony in making her findings at phase two and phase three of step four. Doyal v. Barnhart, 331 F.3d 758, 761 (10th Cir. 2003). The ALJ may not delegate the step-four analysis to the VE. She may rely on VE information regarding the demands of Plaintiff's past relevant work and whether a person with Plaintiff's RFC could meet those demands, and she may accept the VE's opinions. Doyal, 331 F.3d at 761. The critical distinction is whether the ALJ relied upon the VE testimony in making the findings or whether the ALJ delegated the phase two and phase three findings to the VE. Id. 331 F.3d at 761. Where the ALJ makes the phase two and phase three findings and quotes the VE testimony approvingly in support of those findings, she has properly relied upon the VE testimony. Id.

Plaintiff acknowledges that the ALJ performed phase one of the step four process when she assessed RFC. She argues, however, that the ALJ erred at both phase two and phase three of the step four process. She argues that the ALJ failed to make adequate, specific, on the record findings regarding the demands of her past relevant work as a security guard in her position at First Response in 2005 to 2007. This is so, she argues, because although she provided evidence regarding her work as a security guard in 1993-95, she did not provide information regarding how she performed the position at First Response, and the 1993 position occurred too long ago to constitute past relevant work. (Pl. Br. 11-12). She argues, based upon this court's decision in Nagengast v. Astrue, 10-1287-JWL, 2011 WL 3794283, *3 (D. Kan. Aug. 25, 2011), that simply relying upon the DOT description of an occupation will not satisfy the phase two requirements. (Pl. Br.

12).  And, she argues that even the VE testimony regarding the demands of the job at First Response may not be relied upon because there is no record evidence regarding the demands of that job upon which the VE could have properly relied.  <u>Id.</u>  Plaintiff then argues that because there is no record evidence regarding how she performed her past relevant work as a security guard, it is impossible at phase three of step four to determine whether Plaintiff is able  to meet those unknown job demands.  (Pl. Br. 13).

  The Commissioner argues that Plaintiff bears the burden at step four, so her argument that the record does not contain sufficient evidence to demonstrate the demands of Plaintiff's past relevant work is misplaced.  (Comm'r Br. 4-5).  She argues that an ALJ may rely upon the DOT description unless the claimant provides evidence showing otherwise.  <u>Id.</u> at 5.  She argues that, in any case the record evidence supports the finding that Plaintiff can perform the job of a security guard as that job is usually performed in the economy, based on the DOT and the testimony of the VE.  <u>Id.</u> at 5-6.

  The court finds no error in the ALJ's step four determination.  As Plaintiff acknowledges, she testified at the hearing (at which the VE also appeared) that in 2005-07 she worked as a security guard for First Response, "a truck company." (R. 33).  She testified that she worked "[c]hecking out trucks and coming in and out and walking the grounds."  <u>Id.</u>  The ALJ found that a job as a security guard is "light in exertion with an SVP [(specific vocational preparation)] of 3, [and] semi-skilled." (R. 17).  As Plaintiff's Brief suggests, this is the DOT's description of the job.  (Pl. Br. 12).  And, as Plaintiff points out this court has held that a DOT job description is insufficient alone to satisfy the

phase two requirements of SSR 82-62.  Nagengast, 2011 WL 3794283, at *3.  However, the ALJ in this case did not rely on the DOT job description alone to satisfy the requirement that she determine the demands of claimant's past relevant work.

Here, the ALJ had Plaintiff's testimony that her job as a security guard for a truck company required checking out trucks, coming in and out, and walking the grounds, and the ALJ had the assistance of the VE who reviewed the record, listened to Plaintiff's testimony, and testified herself, (as the ALJ specifically noted) "that a hypothetical individual, like claimant, could perform this job based upon the above found residual functional capacity."  (R. 18).  Moreover, as the Commissioner points out the ALJ had Plaintiff's Work History Report, in which she reported that she had worked as a security guard in 1993-95, and checked trucks in and out, walked the parking lot and the grounds, did no lifting, and did not use machines, tools, or equipment, or technical knowledge or skills.  (R. 224, 228).  While the work done in 1995 was not within fifteen years of Plaintiff's alleged onset date and consequently (as Plaintiff points out) does not qualify as past relevant work, the duties listed are remarkably similar to those described in Plaintiff's testimony regarding her work at First Response.  Further, the VE listened to Plaintiff's testimony, and based on that testimony and her review of Section E of the record in this case ("Disability Related Development" - including Plaintiff's Work History Report) classified Plaintiff's past relevant work as a security guard as light, semi-skilled, with an SVP of 3.  (R. 48-49).  Another critical difference between this case and Nagengast is that here the ALJ relied upon testimony of a VE, whereas in Nagengast the

7

ALJ did not even call on the services of a VE. Thus, in Nagengast, the ALJ was acting as his own vocational specialist and there was nothing in the decision to indicate whether he considered "the job's demands in work-related activities that the ALJ found restricted." Nagengast, 2011 WL 3794283, at *3.

Plaintiff argues that what is missing in this case is any testimony or other evidence regarding the physical demands of her work for First Response with regard to "stooping, kneeling, crouching, crawling, and exposure to cold environments, all work-related activities the ALJ found restricted." (Pl. Br. 12). Plaintiff is not entirely correct in this assertion. Plaintiff testified that she worked as a security guard for a truck company. Inherent in that testimony are certain implications upon which the VE, and by extension the ALJ might properly (and did) rely in formulating her opinion regarding the demands of Plaintiff's past relevant work. As the Commissioner suggests, the burden of proof is on Plaintiff at step four of the sequential evaluation process, and it is Plaintiff's burden to establish the demands of her past work--at least as those demands differ materially from her testimony or reports, or from the mine run of jobs in the occupation in which her past relevant work appears. Plaintiff did not testify that her past work at First Response required greater stooping, kneeling, crouching, crawling, or exposure to cold environments than an expert would expect in the mine run of security guard jobs for a truck company, and in her Work History Report she reported her security guard job in 1993-95 required no stooping, kneeling, crouching, or crawling. To the extent Plaintiff argues that it was the ALJ's duty to ask more specific questions in that regard, the court

8

notes that Plaintiff was represented by an attorney before the Social Security Administration and at the hearing, and:

> in cases such as this one where the claimant was represented by counsel, "'the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure and present [the] claimant's case in a way that the claimant's claims are adequately explored,' and the ALJ 'may ordinarily require counsel to identify the issue or issues requiring further development.' " [Henrie v. Dep't of Health & Human Servs., 13 F.3d 359, 360-61 (10th Cir. 1991)] (quoting Hawkins v. Chater, 113 F.3d 1162, 1167 (10th Cir.1997)).

Maes v. Astrue, 522 F.3d 1093, 1096 (10th Cir. 2008)

Moreover, to the extent that Plaintiff argues that it is error to rely on the job description from 1993-95, the court notes that the Work History Report was completed in September of 2012, and instructed Plaintiff to "List all jobs that you have had in the 15 years before you became unable to work because of your illness, injuries or conditions." (R. 224). The job at First Response from 2005-07 clearly fits within these requirements because it occurred both before her alleged onset date and before she filled out the Work History Report, and it should have been included in the jobs listed in the Work History Report. The court might speculate that the 1993-95 job as a security guard was nearly identical to Plaintiff's job at First Response and that is why she forgot or decided not to include the First Response job in her Work History Report. But, that would be mere speculation, and in any case the court may not (and need not) speculate. For, Plaintiff may not "hide the ball" from the agency and then claim error in the agency's alleged failure to find it. The ALJ made an on-the-record finding regarding the demands of Plaintiff's past relevant work as a security guard, the record evidence supports that

9

finding, and Plaintiff provided no record evidence to suggest that her past relevant work at First Response had demands even as restrictive as the limitations assessed by the ALJ–such as only occasional stooping, kneeling, crouching, or crawling.

Because Plaintiff has not shown that the ALJ erred at phase two in stating the job demands of her past relevant work, her phase three argument (that it is impossible at phase three to determine whether Plaintiff is able to meet the unknown job demands) must also fail. Plaintiff has shown no error in the ALJ's three-phase step four analysis.

### III. Conflict with the DOT

Plaintiff claims that the VE testimony (that the security guard job would meet the limitation that Plaintiff can never be in a cold environment for more than one hour before a change in temperature occurs) conflicts with the DOT because the DOT specifies that a security guard position requires exposure to weather (defined as "exposure to outside atmosphere") frequently. (Pl. Br. 13-14) (citing DOT, DICOT 372.667-030, 1991 WL 673099; and Selected Characteristics of Occupations (SCO) App'x D, (available at http://ssaconnect.com/tfiles/SCO-Appendicies.pdf, last visited May 8, 2017)). Plaintiff bases this argument upon the VE's testimony that this work requires an individual to "be exposed to cold temperature occasionally," and the fact that "occasionally" and "frequently" are terms of art in this context. (Pl. Br. 14) (quoting R. 50) (emphasis in Plaintiff's Brief omitted). Occasionally refers to a frequency of up to one-third of the time, whereas frequently refers to a frequency of between one-third and two-thirds of the time. E.g., SCO, App'x C, C-3 (available at http://ssaconnect.com/tfiles/SCO-

10

Appendicies.pdf, last visited May 8, 2017). The court will assume that the VE erred when she testified that a security guard position requires exposure to cold temperature only occasionally, and that, in fact, such a position requires exposure to cold temperature frequently. But this error, if it is error, is not material to the decision at issue.

As Plaintiff acknowledges in her Brief, when the VE testified that a security guard position requires an individual to "be exposed to cold temperature occasionally," the ALJ responded that the VE "lost me" because "I defined cold for you as one hour at a time before a temperature change." (R. 50); see also (Pl. Br. 14). Therefore neither frequent exposure nor occasional exposure to the cold is relevant in this situation so long as exposure to cold temperature for one hour at a time before a temperature change can be accommodated within the DOT's requirement that a security guard position requires exposure to the weather (cold temperature) from one-third to two-thirds of the time, or between approximately three to six hours of an eight-hour workday.

Based upon the ALJ's clarification, the VE testified that a hypothetical individual with Plaintiff's characteristics would be able to perform the security guard position both as performed by Plaintiff, and as generally performed in accordance with the DOT. Id. at 50-51. And, she testified that with the clarification and corrections made, her testimony was consistent with DOT. Id. at 51. The ALJ found that the VE testimony is consistent with the DOT. Id. at 18. Plaintiff's argument implies that because a security guard might be exposed to cold for two-thirds of a day there is insufficient time to meet the requirements of a temperature change as defined by the ALJ. That is not correct.

11

If such an individual is exposed to cold temperature for one hour at a time for two-thirds of a workday, she would spend about six hours of her workday in the cold, and would spend at least two hours, or 120 minutes having a temperature change, constituting approximately 20 minutes at a time for a temperature change, six times throughout the day. This does not show error in either the VE's testimony or the ALJ's findings. The problem with Plaintiff's argument is further compounded when one recognizes that work as defined in the Social Security regulations provides for a lunch break and two other breaks throughout the workday spaced at approximate two-hour intervals during which the worker would also have a temperature change. Plaintiff has not shown a conflict between the VE testimony and the DOT.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated this 9th day of May 2017, at Kansas City, Kansas.

s:/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**